**PATRIOT SYSTEMS, INC., a Utah corporation, Plaintiff,**

v.

**C–CUBED CORPORATION, a Virginia corporation, and DOES 1–10, Defendants.**

No. 2:97–CV–0536–S.

United States District Court,
D. Utah,
Central Division.

Sept. 25, 1998.

Brent E. Johnson, H. Matthew Horlacher, Holland & Hart, Salt Lake City, UT, for Plaintiff.

William B. Prince, Dorsey & Whitney, Salt Lake City, UT, Stephen D. Bell, Dorsey & Whitney, Denver, CO, James P. Hodges, Kathleen H. McGuan, Reed Smith Shaw & McClay, Washington, DC, for Defendants.

## MEMORANDUM DECISION

SAM, Chief Judge.

Before the court is the motion of defendant C–Cubed Corporation to dismiss for lack of personal jurisdiction and improper venue, pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3) The court, having reviewed the briefing submitted by the parties, will rule on the motion without the assistance of oral argument, pursuant to DUCivR 7–1(f).

## BACKGROUND

Plaintiff Patriot Systems, Inc. is a Utah corporation engaged in the business of developing, manufacturing, and selling computer software products. Defendant is a computer software company located in Virginia.

In approximately 1993, plaintiff developed and copyrighted a software product named "Route 66", a computer program designed to make certain federal government publications more accessible. In 1994, plaintiff was awarded a contract with the United States Government to supply copies of Route 66. After plaintiff's contract expired, defendant was similarly awarded a federal government contract to provide software for the same government publications. In developing its computer program, defendant entered into agreements with the Folio Corporation (Folio), a company headquartered in Provo, Utah. Defendant used Folio's software and paid royalties to Folio.

Plaintiff claims the computer program defendant developed pursuant to its contract infringed plaintiff's Route 66 copyright. Plaintiff has brought suit against defendant, and Does 1–10, alleging causes of action for: (1) trade secret misappropriation, (2) unfair competition, (3) copyright infringement, (4) intentional interference with prospective economic relations, and (5) punitive damages. In its complaint, plaintiff alleges this court has jurisdiction over defendant because it has "transacted business" within Utah, has "sufficient minimum contacts with the State of Utah to meet federal due process requirements", Complaint, ¶ 3, and has injured plaintiff. Plaintiff asserts venue is appropriate pursuant to 28 U.S.C. § 1391. *See* Complaint, ¶ 6. Defendant has now filed the instant motion, seeking an order of dismissal for lack of personal jurisdiction and improper venue.

## ANALYSIS

"[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.1995); *accord Carver v. H.R. Plus*, 992 F.Supp. 1293, 1294 (D.Utah 1998). In the early stages of litigation, this burden may be satisfied by making "a prima facie showing that jurisdiction exists." *Wenz*, 55 F.3d at 1505; *accord Carver*, 992 F.Supp. at 1294; *Dazey Corp. v. Wolfman*, 948 F.Supp. 969, 972 (D.Kan.1996). Allegations in plaintiff's complaint " 'must be taken as true to the extent they are uncontroverted by the defendant's affidavits.' " *Wenz*, 55 F.3d at 1505 (quoting *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985)); *accord Carver*, 992 F.Supp. at 1294. However, "only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Wenz*, 55 F.3d at 1505; *accord Carver*, 992 F.Supp. at 1294; *Dazey Corp.*, 948 F.Supp. at 972. Moreover, "[i]f the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and 'the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.' " *Wenz*, 55 F.3d at 1505 (quoting *Behagen*, 744 F.2d at 733); *accord Carver*, 992 F.Supp. at 1294; *Dazey Corp.*, 948 F.Supp. at 972.

Plaintiff initially argues defendant's motion should be rejected as procedurally improper in that defendant did not support its motion with affidavits controverting plaintiff's allegations of jurisdiction. The court is inclined to agree with defendant that the jurisdictional allegations in plaintiff's complaint are merely

conclusory. Both parties, however, have submitted affidavits and additional documentation for the court's consideration in determining whether plaintiff has sufficiently made a prima facie showing of personal jurisdiction. The court, therefore, declines to dismiss defendant's motion on procedural grounds and will proceed to examine its merits.

*Personal Jurisdiction*

■ Relative to personal jurisdiction, the court may exercise either general or specific jurisdiction over a non-resident defendant, based upon the "subject matter of the claim asserted and the number and quality of 'contacts' the non-resident defendant has with the forum." *Harnischfeger Eng'rs, Inc. v. Uniflo Conveyor, Inc.,* 883 F.Supp. 608, 611 (D.Utah 1995). In the instant case, as plaintiff argues for specific jurisdiction only, *see* Memorandum in Opposition at 6 n. 6, the court will focus on this aspect of personal jurisdiction.

"[S]pecific personal jurisdiction gives a court power over a defendant only with respect to claims arising out of the particular activities of the defendant in the forum state." *Id.* (quoting *Arguello v. Industrial Woodworking Mach. Co.,* 838 P.2d 1120, 1122 (Utah 1992)). Specific jurisdiction exists if the court finds that: (1) "the defendant conducted certain enumerated activities in Utah", (2) "there is a nexus between plaintiff's claim and defendant's conduct", and (3) defendant's contacts with Utah are "such that maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1074 (10th Cir.1995); *accord Harnischfeger Eng'rs,* 883 F.Supp. at 612–13.

### I. *Utah Long–Arm Statute*

In applying this three-step test, the court must first consider whether specific statutory acts under the Utah long-arm statute have been satisfied.[1] Plaintiff argues defendant is subject to long-arm jurisdiction because it

has tortiously caused injury within Utah, contracted to supply goods in Utah, and transacted business in Utah.

### A. *Injury*

Plaintiff initially contends defendant is subject to jurisdiction in Utah because it has caused tortious injury to plaintiff here. *See* Utah Code Ann. § 78–27–24(3) (1996). Plaintiff argues defendant has intentionally interfered with plaintiff's prospective economic relations, misappropriated plaintiff's trade secrets, infringed on plaintiff's copyright, and engaged in unfair competition with plaintiff. However, plaintiff has not alleged defendant committed these acts in Utah. Rather, the essence of plaintiff's complaint is that, because of defendant's conduct, plaintiff has suffered financial injury in Utah where it does business.

■ This court has previously recognized that causing financial injury to a Utah business "has been flatly rejected by the Utah courts as a basis for exercising specific personal jurisdiction." *Harnischfeger Eng'rs,* 883 F.Supp. at 613; *see also* cases cited therein. Additionally, this court and the Tenth Circuit have indicated that accepting such an argument "would likely violate federal due process." *Id.* 883 F.Supp. at 613 n. 6.; *see also Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1079 (10th Cir.1995) ("[T]he mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts."). Accordingly, the court concludes plaintiff's allegations of tortious injury do not support the exercise of personal jurisdiction over defendant under Utah's long-arm statute.

### B. *Contract to Supply Goods*

Plaintiff next argues this court has jurisdiction over defendant because defendant has a current contract to supply its computer

---

1. Pursuant to Utah Code Ann. § 78–27–24 (1996):

Any person ... who in person or through an agent does any of the following enumerated acts, submits himself ... to the jurisdiction of the courts of this state as to any claim arising from:

(1) the transaction of any business within this state;

(2) contracting to supply services or goods in this state;

(3) the causing of any injury within this state whether tortious or by breach of warranty....

program to locations within Utah. *See* Utah Code Ann. § 78–27–24(2) (1996). The record reveals that the United States Government solicited bids for the purpose of providing it with automated copies of certain government publications. In 1994, plaintiff was awarded the contract. After plaintiff's contract expired, the contract was calendared for rebidding. In 1995, defendant was awarded a two-year contract. When rebidding was set for 1997, defendant was again awarded the contract.

The contracts at issue are between the defendant and the United States Government Printing Office in Washington, D.C. Delivering computer programs to Utah was never the ultimate purpose or goal of defendant's contracts with the government. These contracts were solicited and awarded by the federal government, and the government set forth the specifications and requirements. Moreover, the government provided the delivery instructions for the completed products. Thus, preparations for distribution of the programs, including details regarding how they were to be mailed, were dictated by the government. Plaintiff emphasizes that the contracts call for distribution of defendant's program to perhaps three locations within Utah. However, plaintiff obtained those locations from a distribution list provided by the federal government.[2] Moreover, defendant entered into, agreed to perform, and has performed all of its obligations pursuant to its government contracts outside Utah. Even the Folio software defendant uses in conjunction with its computer program, although manufactured in Utah, was purchased outside Utah.

Under these circumstances, even if the court were to find that the contracts technically provided a sufficient basis for long-arm jurisdiction in Utah and a nexus between plaintiff's claims and defendant's contracts existed, due to the distribution of three of defendant's computer programs in Utah, the court is of the opinion that such a finding ultimately would not pass muster under federal due process considerations.

The court applies a two-part test in addressing whether exercising jurisdiction over defendant would satisfy federal due process standards. *See Harnischfeger Eng'rs,* 883 F.Supp. at 614. First, the court must determine if certain "minimum contacts" exist between defendant and Utah. Then, if such contacts exist, the court must determine if exercising jurisdiction over defendant would " 'offend traditional notions of fair play and substantial justice.' " *Id.* (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). To satisfy the first prong of this test, there must be " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and privileges of its laws.' " *Id.* (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

In the court's view, defendant's act of entering into contracts with the federal government in Washington, D.C. to be performed in Virginia does not indicate defendant has purposefully availed itself of the benefits and privileges of conducting business in Utah.[3] Moreover, the fact that possi-

**2.** Two Utah locations appear on the government's distribution list. *See* Affidavit of Clifford Raines, Exhibit 4. Additionally, plaintiff discovered a copy of defendant's program at Hill Air Force Base in Utah although the Base apparently does not appear on the distribution list. *See* Affidavit of H. Matthew Horlacher.

**3.** Plaintiff cites cases from other jurisdictions which it claims support the exercise of personal jurisdiction over defendant pursuant to federal due process considerations. The court, however, finds these cases factually distinguishable in that they involve stronger contacts with the forum state than exist in the present case. *See, e.g., Panavision Int'l, L.P. v. Toeppen,* 938 F.Supp. 616, 621–22 (C.D.Cal.1996), *aff'd,* 141 F.3d 1316 (9th Cir.1998) (court concluded defendant who

registered a California corporation's trademarks as his own internet domain names, knowing the names belonged to the corporation and solely intending to interfere with corporation's business, "expressly aimed his conduct at California" and was subject to personal jurisdiction there); *Thomas Jackson Publishing, Inc. v. Buckner,* 625 F.Supp. 1044, 1046 (D.Neb.1985) (court found defendants' acts purposefully directed at Nebraska because retail stores throughout Nebraska regularly distributed and sold sheet music and recordings of the infringing song and listed defendants as its authors and performers; defendants performed the infringing song on national television programs; one defendant gave an interview on a national cable network identifying himself as author, producer and a performer of the infringing song; and Nebraska radio stations

bly three copies of defendant's program were to be shipped to Utah pursuant to the contracts, out of thousands of programs defendant has produced, does not aid plaintiff's argument. Rather, it appears three programs may have been shipped to Utah incidentally as part of carrying out the government's distribution instructions pursuant to the contracts. Accordingly, the court concludes defendant's government contracts do not provide an adequate basis for exercising personal jurisdiction.

### C. *Transacting Business*

Under the statutory language, "[t]he words 'transaction of business within this state' mean activities of a nonresident person, his agents, or representatives in this state which affect persons or businesses within the state of Utah." Utah Code Ann. § 78–27–23(2) (1996). Plaintiff submits defendant has "transacted business" in Utah in three different respects. First, plaintiff alleges defendant has a license agreement for its computer program with Folio, headquartered in Utah. Second, plaintiff alleges defendant's program has been received at several locations within Utah. Third, plaintiff alleges defendant advertises its computer software in Utah through the Internet.

#### 1. *Licensing Agreements and Software Distribution*

Plaintiff has submitted an affidavit indicating defendant has contracted to be a "publisher" with Folio and is also a "registered Folio Business Partner." As a "publisher", defendant currently pays royalties to Folio for the use of its platform in defendant's software and has paid over $12,000.00 in such royalties. *See* Affidavit of Natalie Morton. In response, defendant concedes it has entered into various agreements with Folio and makes royalty payments from Virginia directly to Folio in Utah due to its use of Folio's platform in its software program. *See* Affidavit of Douglas F. Johnson. Defendant argues, however, that such activities are insufficient to establish the transaction of business under Utah's long-arm statute because defendant did not buy the platform directly from Folio itself, never entered Utah to buy the Folio platform, and does not perform any of its obligations under its agreements with Folio in Utah.

Plaintiff also claims defendant has transacted business in Utah by distributing copies of its computer program here. Plaintiff has submitted an affidavit and some documentary evidence that three copies of defendant's program may be found in the offices of military agencies in Utah. *See* Affidavits of H. Matthew Horlacher and Clifford Raines. Defendant denies distributing its program in Utah but recognizes that, at this juncture, all factual disputes are construed in favor of plaintiff. Thus, for purposes of this motion, defendant argues that three copies, out of the 6,000 copies of the program it produces, comprise an insufficient amount of its business to establish personal jurisdiction.

■ The Utah Supreme Court has applied a "liberal and expansive construction" to the statutory definition of transacting business. *Nova Mud Corp. v. Fletcher*, 648 F.Supp. 1123, 1126 (D.Utah 1986). In interpreting this definition, this court has already acknowledged that "a person may transact business within the state even if they are not physically present in Utah." *Harnischfeger Eng'rs*, 883 F.Supp. at 614. Moreover, even "the making of a single phone call to a Utah resident can constitute the 'transaction of business' within the state in as much as the call 'affects persons and businesses within the State of Utah.'" *Id.* (quoting *Nova Mud*, 648 F.Supp. at 1126). In light of these broad interpretations, the court is of the opinion that defendant's undisputed royalty payments to Folio of over $12,000.00 and defendant's purported distribution of its software program in Utah have undoubtedly affected persons or businesses within Utah so as to constitute transacting business for purposes of Utah's long-arm statute.

#### 2. *Internet Website*

Finally, plaintiff contends defendant has transacted business in this state by maintaining an Internet website, accessible by anyone in Utah, through which to advertise and market its allegedly infringing software. Plaintiff has provided hard copies printed from

have broadcasted defendants performing the infringing song.).

defendant's website. *See* Affidavit of H. Matthew Horlacher and exhibits attached thereto. Defendant concedes it maintains an Internet website in Virginia which is accessible to Internet users.

The application of personal jurisdiction standards to Internet usage presents interesting and novel issues. In *SF Hotel Co., L.P. v. Energy Invs., Inc.*, 985 F.Supp. 1032 (D.Kan.1997), the United States District Court for the District of Kansas recently addressed these issues. The court acknowledged that "'the development of the law concerning the permissible scope of personal jurisdiction based on Internet use is in its infant stages.'" *Id.* 985 F.Supp. at 1034 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1123–24 (W.D.Pa. 1997)). However, current case law reveals three general categories along a "sliding scale" for evaluating jurisdiction. *Id.* First, personal jurisdiction is established when "'a defendant clearly does business over the Internet'", such as entering into contracts which require the "'knowing and repeated transmission of computer files over the Internet.'" *Id.* (quoting *Zippo*, 952 F.Supp. at 1123–24). Second, exercising personal jurisdiction is not appropriate when the Internet use involves "'[a] passive Web site that does little more than make information available to those who are interested in it.'" *Id.* (quoting *Zippo*, 952 F.Supp. at 1123–24). Under these circumstances, "'a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.'" *Id.* (quoting *Zippo*, 952 F.Supp. at 1123–24). Third, a middle category encompasses "'interactive Web sites where a user can exchange information with the host computer.'" *Id.* (quoting *Zippo*, 952 F.Supp. at 1123–24). Whether the exercise of jurisdiction is appropriate depends upon "'the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.'" *Id.* (quoting *Zippo*, 952 F.Supp. at 1123–24).

■ The court finds this analysis helpful in this relatively new and changing area of law and is of the opinion that the evidence

plaintiff presents in the instant case most closely aligns with the second category described above. That is, defendant's Internet website is a passive advertisement which merely provides information to those interested in it. Accordingly, the court concludes defendant's Internet website does not support the exercise of personal jurisdiction over defendant.[4] *See, e.g., Bensusan Restaurant Corp. v. King*, 937 F.Supp. 295 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir.1997) (defendant's maintenance of Internet website with telephone number to order allegedly infringing product insufficient to support personal jurisdiction over defendant under state long-arm and federal due process standards).

In view, of the court's conclusion that defendant has transacted business in Utah pursuant to Utah's long-arm statute, through its agreements with and royalty payments to Folio, the court must consider the next step in the analysis, the nexus between plaintiff's claims and defendant's conduct.

## II. *Nexus*

This court has previously interpreted the nexus requirement as "granting jurisdiction to the courts of this state only where a nonresident defendant has engaged in some conduct within the state and the plaintiff's claims against the defendant specifically '*arise from*' that conduct." *Harnischfeger Eng'rs*, 883 F.Supp. 608, 617–18 (emphasis added). The *Harnischfeger Eng'rs* court explained:

> [T]he phrase "arising from" in the Utah long-arm statute is clear and unambiguous. It means that something "originates" or "springs" from something else. In the court's mind, this language is quite narrow and therefore mandates that the court abstain from taking jurisdiction in those cases where the plaintiff's claims and the defendant's contacts are only tenuously "related."

*Id.* 883 F.Supp. at 617.

Plaintiff claims defendant has engaged in: (1) trade secret misappropriation, (2) unfair

4. Plaintiff notes that the Internet websites of other companies, Folio and Per Diem, include references to defendant. *See* Memorandum in Opposition at 5 n. 5. Based on the evidence presented by plaintiff, however, these other websites appear to provide no more than a listing for or general information about defendant.

competition, (3) copyright infringement, and (4) intentional interference with prospective economic relations, and plaintiff seeks (5) punitive damages. The court has determined defendant is subject to personal jurisdiction in Utah, under the "transacting business" provision of Utah's long-arm statute, by virtue of its royalty payments to Folio, pursuant to its agreements with that Utah company, and the distribution of possibly three copies of its program to military offices in Utah.

▪ Defendant concedes it uses the Folio platform in its computer program at issue, it has entered into several agreements with Folio as a "publisher" and a "registered Folio Business Partner", and it pays Folio royalties pursuant to those agreements. The court, however, cannot conclude plaintiff's claims originate or spring from the licensing and royalty agreements between defendant and Folio. Rather, the court is of the opinion that plaintiff's claims actually arise from defendant's unilateral decisions and conduct once it obtained the Folio platform. Although defendant's agreements with Folio may be related to the trade secret misappropriation and copyright infringement plaintiff alleges, and may have enabled defendant to engage in this alleged questionable conduct, such claims do not originate or spring from the agreements with Folio by themselves. The court, likewise, cannot conclude plaintiff's claims originate or spring from the alleged distribution of three copies of defendant's software in Utah. Rather, the court agrees with defendant that plaintiff's claims must necessarily predate any distribution of defendant's program in Utah.

Accordingly, the court finds there is no sufficient nexus between plaintiff's causes of action and defendant's contacts with Utah which comprise "transacting business". The court, thus, need not continue the jurisdictional analysis under this provision of the long-arm statute.

*Venue*

Plaintiff alleges venue is appropriate pursuant to 28 U.S.C. § 1391.[5] However, because the court has determined it has no personal jurisdiction over defendant, venue is likewise not proper in this district under the relevant provisions of this statute.

**CONCLUSION**

In sum, the court finds that defendant's contacts with Utah relative to plaintiff's claims are inadequate to establish specific personal jurisdiction over defendant. Additionally, venue in this district is improper. Therefore, defendant's motion is hereby GRANTED.

The court recognizes plaintiff has requested the opportunity to conduct discovery concerning jurisdiction if the court determines the current evidence is insufficient to establish personal jurisdiction. *See* Memorandum in Opposition at 6, n. 6. Because the court finds defendant's ties to Utah rather tenuous, it declines to grant plaintiff's request. The court, however, dismisses plaintiff's case without prejudice.

It is so ordered.

---

5.  Section 1391 provides, in relevant part:
    (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.
    28 U.S.C. § 1391(b) (1993).