2004 UT 61

**MFS SERIES TRUST III (on behalf of MFS MUNICIPAL HIGH INCOME FUND), Merrill Lynch High Yield Municipal Bond Fund, Inc., Muniholdings Fund, Inc., Merrill Lynch Municipal Bond Fund, The National Portfolio, Merrill Lynch Municipal Strategy Fund, Eaton Vance Distributors, Inc., T. Rowe Price Associates, Inc., John Hancock Funds, Inc., and Putnam Investments, Inc., Plaintiffs and Appellants,**

v.

**John R. GRAINGER, James R. Bullock, John W. Rollins, Jr., John W. Rollins, Sr., Leslie W. Haworth, David B. Thomas, Jr., Henry B. Tippie, James L. Wareham, Grover C. Wrenn, Michael J. Bragagnolo, Henry H. Taylor, Paul R. Humphreys, and Kenneth W. Winger, Defendants and Appellees.**

No. 20020719.

Supreme Court of Utah.

July 16, 2004.

Scott C. Walker, Provo, Richard M. Heimann, San Francisco, California, for plaintiffs.

Andrew G. Deiss, Michael W. Homer, Jesse C. Trentadue, Paul C. Farr, John D. Luthy, E. Barney Gesas, Walter A. Romney, Mark O. Morris, Salt Lake City, Terence H. Campbell, Chicago, Illinois, Carl E. Poli, Northbrook, Illinois, William R. Warne, Tory E. Griffin, Sacramento, California, Dhaivat H. Shah, Menlo Park, California, for defendants.

Kenneth W. Winger, defendant pro se.

DURHAM, Chief Justice:

¶ 1 Plaintiffs MFS Series Trust III, Merrill Lynch High Yield Municipal Bond Fund, Inc., Muniholdings Fund, Inc., Merrill Lynch Municipal Bond Fund, The National Portfolio, Merrill Lynch Municipal Strategy Fund, Eaton Vance Distributors, Inc., T. Rowe Price Associates, Inc., John Hancock Funds, Inc., and Putnam Investments, Inc. appeal the trial court's dismissal of their complaint for lack of personal jurisdiction. We affirm, because defendants' minimum contacts with Utah are insufficient for Utah's courts to exercise jurisdiction over them.

## BACKGROUND

¶ 2 Plaintiffs, nonresidents of Utah, filed their original complaint against thirteen defendants: James R. Bullock, John R. Grainger, Leslie W. Haworth, all residents of Canada (Canadian directors); David E. Thomas, Jr., John W. Rollins, Sr., John W. Rollins, Jr., James L. Wareham, Grover C. Wrenn, Henry B. Tippie (outside directors); Henry H. Taylor, Michael J. Bragagnolo, Kenneth W. Winger, and Paul R. Humphreys (inside directors). The Canadian directors are former officers and directors of Laidlaw Environmental Services, Inc. (LES), a partially-owned subsidiary of Laidlaw, Inc. (Laidlaw), and its successor, Safety–Kleen Corporation (Safety–Kleen). Rollins, Sr., Rollins, Jr., and Tippie were outside directors of LES and Safety–Kleen since before May 1997. Thomas and Wareham were outside directors of

LES since June 1997. Wrenn became an outside director of LES in July 1997. Taylor, Bragagnolo, Winger and Humphreys were executives of Safety–Kleen and/or its predecessors. Winger and Humphreys did not respond to the original complaint or file a motion to dismiss, and therefore are not parties to this appeal. Therefore, for purposes of this appeal, Winger and Humphreys are excluded when we refer to defendants.

¶ 3 Tooele County issued Pollution Control Refunding Revenue Bonds (the bonds) on July 1, 1997. These were secured by a loan agreement of $45.7 million between LES and Tooele County for funding of LES-operated hazardous waste disposal facilities in Tooele County. LES merged with Safety–Kleen during April and May, 1998. LES assumed the name of Safety–Kleen at that time and Safety–Kleen assumed all obligations of LES.

¶ 4 LES incorporated its 1997 financial reports into the bond offering documents. Subsequent to the sale of securities, LES admitted that these financial statements contained material misstatements, and Safety–Kleen filed for chapter 11 bankruptcy. Plaintiffs allege that they relied on the financial statements provided by LES when purchasing the bonds. The bonds became worthless and Safety–Kleen placed several LES officers, Humphreys, Winger and Bragagnolo, on administrative leave.

¶ 5 Plaintiffs brought suit alleging violations of Utah's securities laws and common law fraud and negligence. Particularly, plaintiffs allege reliance on LES's incorrect financial statements. Defendants moved for dismissal of the complaint for lack of personal jurisdiction. The trial court issued an order of dismissal on June 19, 2002. Plaintiffs filed a timely notice of appeal. Plaintiffs concede that there is no basis for personal jurisdiction over defendant Wrenn, and do not appeal the trial court's ruling regarding him.

## STANDARD OF REVIEW

¶ 6 When determining whether the trial court correctly granted a motion to dismiss, we "accept the factual allegations in the complaint as true and consider them, and all reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party." *Krouse v. Bower*, 2001 UT 28, ¶ 2, 20 P.3d 895.

¶ 7 The question before this court is whether the trial court erred in granting defendants' motion for dismissal for lack of personal jurisdiction. "Where a pretrial jurisdictional decision has been made on documentary evidence only, an appeal from that decision presents only legal questions that are reviewed for correctness." *Arguello v. Indus. Woodworking Mach. Co.*, 838 P.2d 1120, 1121 (Utah 1992).

## ANALYSIS

### I. PERSONAL JURISDICTION

¶ 8 Plaintiffs argue that Utah's securities statute, Utah Code Ann. § 61–1–22(4) (1997 & Supp.2000), grants the state personal jurisdiction over defendants when a prima facie case for liability under the statute has been made. They argue that defendants were officers or directors of Safety–Kleen or LES and that the statute extends liability to officers and directors to the same extent as to the corporation. Plaintiffs further argue that the statute, in creating liability, confers personal jurisdiction over defendants. Finally, they claim that section 61–1–26(8)(a) grants personal jurisdiction and provides a method of serving process on nonresident defendants. *See* Utah Code Ann. § 61–1–26(8)(a) (1997 & Supp.2000).

¶ 9 Due process requires minimum contacts between the forum and defendants before a court may properly exercise personal jurisdiction. *Synergetics v. Marathon Ranching Co.*, 701 P.2d 1106, 1110 (Utah 1985). The Fourteenth Amendment to the United States Constitution requires the states to provide due process. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Therefore, we analyze the due process questions under the Fourteenth Amendment.

## II. MINIMUM CONTACTS

 ¶ 10 A court cannot exercise personal jurisdiction against a defendant unless there exist "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Intl. Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation omitted). Establishing minimum contacts with the forum state requires that the defendant must have " 'purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.' " *Mallory Eng'g, Inc. v. Ted R. Brown & Assocs.,* 618 P.2d 1004, 1008 (Utah 1980) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Courts properly exercise personal jurisdiction only "where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state." *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). We exercise specific personal jurisdiction " 'only on claims arising out of defendant's forum-state activity,' " *Neways, Inc. v. McCausland,* 950 P.2d 420, 423 (Utah 1997), and the contact between the defendant and the forum state must be such that the defendant " 'should reasonably anticipate being haled into court there.' " *Synergetics,* 701 P.2d at 1110 (quoting *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559.) Finally, "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Thus, "the determination of whether Utah can justify asserting jurisdiction over defendants hinges on the balancing of fairness to the parties and the interests of the State in assuming jurisdiction." *Synergetics,* 701 P.2d at 1110–11 (footnote omitted).

 ¶ 11 Mere corporate status can never be the basis for jurisdiction; "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). Thus, contacts giving rise to jurisdiction over a corporation cannot automatically be attributed to its officers and directors; rather, each individual defendant must have sufficient contacts. *Id.* Due process is only satisfied based on the "quality and nature of the activity" for each individual defendant. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

¶ 12 In response to defendants' affidavits, plaintiffs submitted LES's offering memorandum for the bond issuance. This document listed the corporate roles of each defendant. Bragagnolo was the chief operating officer. Taylor was general counsel and secretary. Bullock, Grainger and Haworth were directors holding high executive offices with Laidlaw. Rollins, Sr., Rollins, Jr., Thomas, Tippie and Wareham were outside directors.

 ¶ 13 Plaintiffs alleged that Taylor had signed some of the "irregular" corporate financial statements in his role as general counsel and secretary. Taylor submitted an affidavit, however, stating that his purpose in doing so was solely to attest to Humphreys' signature on the document. He had also sent a letter expressing certain opinions regarding the bond placement agreement. His affidavit, however, points out that this letter exempted him from "any opinions or representations regarding certain portions of the [O]ffering [M]emorandum, including the financial statements of LES contained in the [O]ffering [M]emorandum." Plaintiffs alleged that Bragagnolo was integrally involved in the preparation and publishing of the incorrect financial statements. Bragagnolo submitted an affidavit specifically disputing any involvement in the bond issuance, including the preparation of financial documents. All other allegations were based solely on defendants' corporate status.

 ¶ 14 Each defendant submitted affidavits specifically denying allegations of personal dealings regarding the bond issuance. When a plaintiff "relies on facts alleged in his unverified complaint for his assertion of jurisdiction" and the defendant responds with

an "affidavit setting forth its version of the jurisdictional facts," on appeal, "the facts asserted in the affidavit are taken as true and the facts recited in the complaint are considered only to the extent that they do not contradict the affidavit." *Arguello v. Indus. Woodworking Mach. Co.,* 838 P.2d 1120, 1121 (Utah 1992). Thus, we must accept the facts in defendants' affidavits contradicting allegations in the complaint as true. That leaves plaintiffs to rely solely on defendants' status as officers or directors of the corporation to support personal jurisdiction over them.

¶ 15 Citing *Seagate Tech. v. A.J. Kogyo, Co.,* plaintiffs argue that "if a corporate officer may be held personally responsible for causing the corporation to act, that act may be imputed to the officer for purposes of establishing jurisdiction over him." 219 Cal.App.3d 696, 703, 268 Cal.Rptr. 586 (1990). *Seagate,* however, dealt with the affirmative actions of an officer. In the instant case, plaintiffs made no allegations of affirmative actions on the part of defendants. Instead they merely made allegations based on defendants' status as directors and officers. The forum state must find minimum contacts based on defendants' 'purposeful availment' of the "benefits and protections of [the forum state's] laws." *Asahi,* 480 U.S. at 109, 107 S.Ct. 1026. Defendants must have performed some affirmative action themselves for this court to find that they 'purposefully availed' themselves.

¶ 16 *Eaton Vance Distributors, Inc. v. Grainger* illustrates this rule. No. C040158, 2003 WL 1521896, 4 (Cal.Ct.App. 3d Dist.) (2003)(unpublished opinion). *Eaton Vance* is extremely persuasive because precisely the same jurisdictional issues addressed in that case are at issue here. *Id.* In fact, defendants in the instant case were also defendants in *Eaton Vance.* There the court undertook the same minimum contacts analysis that we have undertaken. *Eaton Vance* turned on the same question we are considering: is a control person liability statute sufficient to confer personal jurisdiction? *Id.*

¶ 17 In determining whether sufficient minimum contacts existed for California to exercise personal jurisdiction over the defen-

dants, the *Eaton Vance* court reasoned that the

> evidence does not show which individual officers and directors personally directed or actively participated in the alleged tortious conduct, or whether they purposefully directed that conduct toward [the forum state]. Plaintiffs state generally that the officers and directors collectively controlled, managed and operated LES and thereby directed the offering of the bonds to the plaintiffs. From this evidence, one can only speculate that individual officers and directors personally directed or actively participated in the tortious conduct; this does not suffice to establish specific personal jurisdiction.

*Id.* at 4.

¶ 18 As noted earlier, personal jurisdiction requires minimum contacts sufficient to satisfy the demands of "fair play and substantial justice." *Burger King,* 471 U.S. at 477–78, 105 S.Ct. 2174. The sole contact between Utah and defendants is that defendants were directors or officers of LES or Safety–Kleen. It would not comport with notions of "fair play and substantial justice" under *Burger King* to require defendants to answer personally in Utah courts. Therefore, like California, we cannot assert jurisdiction here.

### III. UTAH'S LONG–ARM STATUTE

¶ 19 Plaintiffs attempt an end-run around fourteenth amendment due process requirements by referencing Utah's long-arm statute. Utah's long-arm statute allows the exercise of jurisdiction over nonresident defendants to the "fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code Ann. § 78–27–22 (2002). "This court has explicitly upheld this policy." *SII MegaDiamond, Inc., v. Am. Superabrasives,* 969 P.2d 430, 433 (Utah 1998) (citing *Synergetics v. Marathon Ranching Co.,* 701 P.2d 1106 (Utah 1985)).

¶ 20 Plaintiffs, however, seek to use the Utah long-arm statute in conjunction with section 61–1–22(4) of the Utah Code. According to plaintiffs, allegations of liability under section 61–1–22(4) of the Utah Code

support personal jurisdiction over defendants. The relevant language states, "(a) Every person who directly or indirectly controls a seller or buyer liable, ... every *partner, officer, or director* of such a seller or buyer ... *who materially aids* in the sale ... is also *liable jointly and severally* with and to the same extent as the seller or purchaser...." Utah Code Ann. § 61–1–22(4) (2000) (emphasis added).

¶ 21 Plaintiffs argue that this statute confers jurisdiction over liable parties, but conflating the concept of liability with that of jurisdiction in this manner is improper. "Liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." *Sher v. Johnson,* 911 F.2d 1357, 1365 (9th Cir.1990); (citing *Shaffer,* 433 U.S. at 204 & n. 19, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). Section 61–1–22(4) speaks to liability only and does not purport to grant personal jurisdiction. Nothing in the statutory language indicates that the legislature intended to do so. Even if the statute attempted to confer personal jurisdiction, due process would still require an analysis of minimum contacts. Permitting allegations of liability under Utah's securities laws to automatically give rise to personal jurisdiction, without first considering whether each defendant "purposefully availed" himself of the benefits and protections of Utah's laws, would be to ignore the due process requirements of the fourteenth amendment. See *Intl. Shoe,* 326 U.S. at 316, 66 S.Ct. 154.

### A. Control Person Liability Statutes

¶ 22 In support of their argument, plaintiffs reason that the comparable federal statute, section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. Section 78t(a), has been interpreted to grant jurisdiction over defendants "wherever [they] may be found." *San Mateo County Transit Dist. v. Dearman,* 979 F.2d 1356, 1358 (9th Cir.1992); *see also McNamara v. Bre-X Minerals Ltd.,* 46 F.Supp.2d 628, 640–41 (E.D.Tex.1999) (discussing defendants' national contacts in light

of Securities Exchange Act); *Derensis v. Coopers & Lybrand Chartered Accountants,* 930 F.Supp. 1003, 1013–14 (D.N.J.1996); *Landry v. Price Waterhouse Chartered Accountants,* 715 F.Supp. 98, 101–02 (S.D.N.Y. 1989). Plaintiffs argue that we should interpret Utah's statute similarly. We are unpersuaded. While violating a federal statute may grant personal jurisdiction in any federal court, state statutes cannot properly create such wide latitude in the exercise of personal jurisdiction. *Sec. Investor Prot. Corp. v. Vigman,* 764 F.2d 1309, 1315 (9th Cir.1985) (citing *Johnson v. Creative Arts & Wool Masters, Inc.,* 743 F.2d 947, 950 (1st Cir.1984) ("Minimum contacts with a particular district or state ... is not a limitation imposed on the federal courts in a federal question case by due process concerns.")). In addition, the phrase "wherever he may be found" in the federal statute does not obviate the necessity that the court find minimum contacts between the United States and the defendant. *See McNamara,* 46 F.Supp.2d at 633 (holding minimum contacts were necessary for personal jurisdiction over defendant).

¶ 23 Minimum contacts are always necessary for the proper exercise of personal jurisdiction. *Synergetics v. Marathon Ranching Co.,* 701 P.2d at 1110. The *McNamara* court found jurisdiction over the defendants based on a "national contacts standard." 46 F.Supp.2d at 641 (rejecting defendants' argument that no minimum contacts with the state were necessary for exercise of personal jurisdiction because the stated claim was based on a federal, not a state, statute). In *San Mateo,* the court gave further guidance by citing the Securities Exchange Act, 15 U.S.C. § 78(a), which states, "Any suit or action to enforce any liability ... created by this chapter ... may be brought in any such district or in the district wherein the defendant is found." 979 F.2d at 1357 (quoting 15 U.S.C. Section 78(a) (1934)). Utah does not have the authority present under the federal securities laws for exercising personal jurisdiction over defendants based on national contacts.

¶ 24 We find the reasoning in *Schlatter v. Mo-Comm Futures, Ltd.* persuasive. 233

Kan. 324, 662 P.2d 553 (1983). Like the instant case, *Schlatter* involved the issue of whether personal jurisdiction could be exercised over directors of a company. In *Schlatter*, the court reached its decision after extensive discovery involving the defendant directors' actions regarding the securities transaction in question. Here similar discovery is unavailable; we rely instead on the allegations in the complaint and the responsive affidavits. The critical analysis, however, is unaffected. The decision in *Schlatter* rested upon interpretation of a Kansas statute similar to Utah Code section 61–1–22(4). *Id.* at 337, 662 P.2d 553. The court held that the statute required "something more than a failure to act on the part of a nonresident director" in order to confer personal jurisdiction. *Id.* at 332, 662 P.2d 553. In holding that the state could not extend personal jurisdiction over defendants, the court explained, "It is true that the statute establishes the basis for liability of persons involved in the sale of unregistered securities but it does not establish the jurisdiction of the court to submit such persons to liability." *Id.* at 337, 662 P.2d 553. The court held that Kansas "must first have [personal] jurisdiction of [the defendants] before the statutory liability may be applied." *Id.* We likewise hold that Utah Code section 61–1–22(4) does not create personal jurisdiction over defendants.

### B. Service of Process Statute

¶ 25 Plaintiffs' argument that section 61–1–26(8)(a) is an additional way for Utah to obtain personal jurisdiction over defendants is a misreading of its provisions. This statute provides a substitute method for service of process, assuming that jurisdiction over the defendant is proper. Utah Code Ann. Section 61–1–26(8)(a)(2000). The relevant language of the statute provides:

> When any person ... engages in conduct prohibited or made actionable by this chapter ... and *personal jurisdiction over him cannot otherwise be obtained* in this state, that conduct shall be considered equivalent to his appointment of the division or the director ... *to receive service* of any lawful process ... with the same

force and validity as if served on him personally.

*Id.* (emphasis added).

¶ 26 This statute speaks only to service of process and does not create personal jurisdiction, nor could it. Two cases involving nearly identical service of process statutes illustrate this well. *Bank of Am. Nat'l Trust & Sav. Assoc. v. GAC Props. Credit*, 389 A.2d 1304, 1309–10 (Del.Ch.1978) (asserting that Delaware securities statute required minimum contacts for the exercise of personal jurisdiction); *Paulos v. Best Sec., Inc.*, 260 Minn. 283, 109 N.W.2d 576, 579–82 (1961) (although Minnesota statute provided valid service of process, minimum contacts still required to exercise personal jurisdiction). Although service of process according to our statute may be proper, personal jurisdiction cannot be exerted absent sufficient contacts with the forum state.

### CONCLUSION

¶ 27 We affirm the district court's dismissal for lack of personal jurisdiction. Defendants' noninvolvement in the bond issuance and lack of other substantial contacts with Utah show insufficient contacts with the state to establish personal jurisdiction in this forum. Statutory authority for the exercise of personal jurisdiction over defendants is nonexistent, and could not in any event circumvent the requirements of due process. Subsection 61–1–22(4) of the Utah Code does not grant jurisdiction, but instead only subjects control persons to liability. Subsection 61–1–26 of the Utah Code merely provides a method for service of process, not a method of obtaining personal jurisdiction. Affirmed.

¶ 28 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.