IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Ginger Gardner, individually, and as guardian of her minor child, S.L.G.; Heather Ann Gardner; and Joshua Lee Gardner, | ) ) ) ) | OPINION<br><br>Case No. 20090768-CA |
| | ) | |
| Plaintiffs and Appellants, | ) ) | F I L E D<br>(February 16, 2012) |
| v. | ) ) | |
| SPX Corporation; HOJ Engineering & Sales Co., Inc.; Schneider Electric Holding, Inc.; and Schneider Canada, Inc., | ) ) ) ) ) | 2012 UT App 45 |
| | ) | |
| Defendants and Appellees. | ) | |

-----

Third District, Salt Lake Department, 040922873
The Honorable Robert P. Faust
The Honorable Timothy R. Hanson

Attorneys:      Robert G. Gilchrist and Jordan P. Kendell, Salt Lake City, for Appellants
                Kenneth W. Yeates, E. Scott Savage, Kyle C. Thompson, Katherine E. Venti, James T. Blanch, and Zack L. Winzeler, Salt Lake City; and Joseph J. Joyce and Ryan J. Schriever, South Jordan, for Appellees

-----

Before Judges McHugh, Voros, and Davis.

VOROS, Associate Presiding Judge:

¶1      Appellant Ginger Gardner, with her children (collectively, Gardner), challenges the trial court's ruling dismissing her claims against Appellee Schneider Canada for

lack of personal jurisdiction.  She also challenges a jury instruction on superseding cause with respect to claims against Appellees SPX Corporation and HOJ Engineering & Sales Co.  We affirm.

BACKGROUND

¶2     In November 2002, Gardner's husband, Aaron Gardner, was working as a delivery driver for Sysco Intermountain Foods, Inc.  While he was working at the loading dock in Sysco's West Jordan facility, a vertical dock leveler unexpectedly fell, killing him.[1]

¶3     Gardner alleged that a component of the dock leveler, a control box, was defective.  The control box was designed by Schneider Canada, a Canadian company.  Square D Company, a Delaware corporation whose principal place of business is in Illinois, has an ownership interest in Schneider Canada.  However, Square D and Schneider Canada are separate and distinct legal entities.  Square D maintains an office in Utah.

¶4     Schneider Canada designed and manufactured the control boxes in question based on specifications provided by the Canadian division of a company called Serco.  Serco is the predecessor-in-interest of SPX.  Schneider Canada sold hundreds of control boxes in Canada to a company called Guillevin International, Inc. Guillevin sold the control boxes in Canada to Serco's Canadian division, which in turn sold the control boxes to its affiliate, SPX, in the United States.  Over the course of the business relationship, SPX and/or Serco purchased "hundreds, if not thousands" of control boxes from Schneider Canada or its distributor, Guillevin.

¶5     Schneider Canada knew that some of the control boxes it manufactured would be installed in dock levelers destined for the United States market, but it did not know

---

[1]The trial court entered findings of fact in support of its order dismissing Gardner's claims against Schneider Canada.  Gardner does not challenge those factual findings on appeal.  We recite the facts accordingly.

the states in which the dock levelers would be installed. Specifically, no evidence shows that Schneider Canada knew that any of its control boxes would be incorporated into dock levelers used in Utah. Sysco purchased forty-four such dock levelers. HOJ installed the dock leveler containing the control box at the Sysco facility where Gardner's husband was killed.

¶6    Gardner sued SPX, alleging negligence, strict liability, failure to warn, and breach of warranty. She sued HOJ, alleging negligence, failure to warn, and breach of warranty. And she sued Schneider Canada, alleging negligence, strict liability, failure to warn, and breach of warranty.

¶7    Before trial, Schneider Canada filed a motion to dismiss for lack of personal jurisdiction. Gardner and SPX both opposed the motion. The trial court granted Schneider Canada's motion to dismiss, ruling that (1) Schneider Canada was "not conducting substantial and continuous local activity in the State of Utah sufficient to meet the requirements for . . . general jurisdiction"; (2) Schneider Canada "does not have minimum contacts with Utah such that the maintenance of the suit against it does not offend traditional notions of fair play and substantial justice"; (3) Schneider Canada's having manufactured the control box in Canada and sold it to a Canadian distributor for installation in a dock leveler manufactured in Canada "is not activity sufficient to show that Schneider Canada purposefully availed itself of conducting business in the State of Utah"; (4) "[m]ere awareness by Schneider Canada that some of its control boxes would be placed in dock levelers sold and used in the United States is not sufficient to confer jurisdiction over Schneider Canada in the State of Utah"; (5) Schneider Canada's having placed the control box into the stream of commerce is not sufficient to confer jurisdiction over Schneider Canada in Utah; and (6) "Schneider Canada's relationship with Square D Company does not establish jurisdiction over Schneider Canada."

¶8    The case proceeded to trial against SPX and HOJ. The jury returned a special verdict in which it determined that SPX was not negligent in the design of the control box, that SPX did not manufacture and sell a product containing a design defect that made the product unreasonably dangerous, and that HOJ was not negligent. As instructed on the special verdict form, the jury left undecided questions of proximate cause and allocation of fault.

ISSUES AND STANDARDS OF REVIEW

¶9     Gardner advances two claims of error on appeal.  First, she contends that the trial court erred in dismissing her claims against Schneider Canada for lack of personal jurisdiction.  "Trial courts 'may determine jurisdiction on affidavits alone, permit discovery, or hold an evidentiary hearing.'"  *Phone Directories Co., v. Henderson,* 2000 UT 64, ¶ 2, 8 P.3d 256 (quoting *Anderson v. American Soc'y of Plastic & Reconstructive Surgeons,* 807 P.2d 825, 827 (Utah 1990)).  Where, as here, the trial court determines personal jurisdiction on documentary evidence alone, we review its ruling for correctness.  *See id*. (citing *Arguello v. Industrial Woodworking Machine Co.,* 838 P.2d 1120, 1121 (Utah 1992)).

¶10     In addition, Gardner contends that the trial court erred in instructing the jury on superseding cause.  Challenges to jury instructions are reviewed for correctness. *Daniels v. Gamma West Brachytherapy, LLC,* 2009 UT 66, ¶ 22, 221 P.3d 256.


ANALYSIS

## I.  Personal Jurisdiction

¶11     Gardner contends that the trial court erred in dismissing her claims against Schneider Canada for lack of personal jurisdiction.  She argues that Schneider Canada knew that the majority of SPX's dock levelers were sold to the U.S. market, and that in fact "there was a regular and anticipated flow of products from the manufacturer (Schneider Canada) to the seller (SPX) to the retail user, (Sysco) in Utah."  She also argues that, as "part of a large global conglomerate that consistently markets and sells its products throughout the United States and Utah," Schneider Canada "should have reasonably anticipated being haled into court in Utah."  Schneider Canada's response is two-fold.  First, it argues that the trial court properly dismissed the claims for lack of personal jurisdiction.  Second, it argues that Gardner's claims against Schneider Canada were rendered moot by the jury's verdict in favor of SPX and HOJ.

¶12     "The authority of the state to hale a nonresident into a state court hinges on the ability to establish personal jurisdiction."  *Pohl, Inc. of Am. v. Webelhuth,* 2008 UT 89, ¶ 9, 201 P.3d 944.  "There are two categories of personal jurisdiction:  specific jurisdiction and general jurisdiction."  *Id*.  "General personal jurisdiction permits a court to exercise

power over a defendant without regard to the subject of the claim asserted and is dependent on a showing that the defendant conducted substantial and continuous local activity in the forum state." *Id*. (citation and internal quotation marks omitted). Gardner does not claim that Schneider Canada is subject to general jurisdiction in Utah.

¶13   "[S]pecific personal jurisdiction gives a court power over a defendant only with respect to claims arising out of the particular activities of the defendant in the forum state and only if the defendant has certain minimum local contacts." *Id*. ¶ 10 (alternation in original) (citation and internal quotation marks omitted).  Determining specific jurisdiction involves a two-part inquiry:  "First, do [the plaintiff's] claims arise from one of the activities listed in the statute?  And second, are defendant's contacts with this forum sufficient to satisfy the due process clause of the fourteenth amendment if the trial court exercises jurisdiction?" *Anderson*, 807 P.2d at 826.  "If [the long-arm statute] does not permit jurisdiction, then the inquiry is ended; if it does, then the question is whether the statute's reach comports with due process." *Arguello,* 838 P.2d at 1122 (Utah 1992).

¶14   The Utah long-arm statute provides that a nonresident may become subject to the jurisdiction of Utah courts by transacting business or causing injury within the state:

> [A]ny person . . . whether or not a citizen or resident of this state, who, in person or through an agent, does any of the following enumerated acts is subject to the jurisdiction of the courts of this state as to any claim arising out of or related to:
> (1) the transaction of any business within this state;
> [or]
> (3) the causing of any injury within this state whether tortious or by breach of warranty.

Utah Code Ann. § 78B-3-205 (2008).[2]  Here, the trial court ruled that "the facts in this case indicate that Schneider Canada's actions may fulfill one or some" of the

---

[2]The section was renumbered without substantial amendment in 2008.  *See* Utah Code Ann. § 78B-3-205 amend. notes (2008).  At the time of trial it appeared at Utah Code section 78-27-24. *See* Utah Code Ann. § 78-27-24 (1998).  We cite to the most current version for the convenience of the reader.

requirements of the long-arm statute.  Schneider Canada cursorily challenges this ruling on the ground that the jury ultimately found that the dock leveler did not contain a design defect that made it unreasonably dangerous.  The premise of this argument is that, where long-arm jurisdiction depends on a defendant having caused an injury within this state, a verdict of no cause of action nullifies jurisdiction.  Schneider Canada offers no support for this premise, and we question it.  *See MFS Series Trust III v. Grainger*, 2004 UT 61, ¶ 21, 96 P.3d 927 ("'Liability and jurisdiction are independent.  Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum.'" (quoting *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990))).

¶15    In any event, courts often go directly to the due process prong of the analysis:

> [W]e often assume the application of the statute—and go straight to the due process issue—because our legislature has directed us to construe it 'so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution' . . . ."

*Anderson v. American Soc'y of Plastic and Reconstructive Surgeons*, 807 P.2d 825, 827 (Utah 1990) (quoting Utah Code Ann. § 78-27-22 (1987)).  We follow this course here, and so proceed to the next step in the analysis.

¶16    "Federal due process requires that in order to subject a defendant to specific personal jurisdiction, there must be 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Pohl, Inc. of America v. Webelhuth,* 2008 UT 89, ¶ 23, 201 P.3d 944 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).  As a general rule, the exercise of jurisdiction is lawful where the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958); *accord Parry v. Ernst Home Cntr. Corp.,* 779 P.2d 659, 665 (Utah 1989).  The contacts between the defendant and the forum state must be such that the defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297 (1980); *accord MFS Series Trust III,* 2004 UT 61 at ¶ 10.

¶17    However, "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78 (1985) (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 292); *accord Pohl*, 2008 UT 89, ¶ 23 n.35. Moreover, "'[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.'" *Parry*, 779 P.2d at 662 (quoting *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 114 (1987)).

¶18    "Hence if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve[,] directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others." *World-Wide Volkswagen Corp.*, 444 U.S. at 297; *accord Arguello v. Industrial Woodworking Machine Co.*, 838 P.2d 1120, 1124 (Utah 1992). "Put simply, the defendant must have taken deliberate steps to serve the forum state market with the product that is the subject of the suit before being susceptible to jurisdiction in that state." *Arguello*, 838 P.2d at 1124.

¶19    The most instructive Utah case is *Parry v. Ernst Home Center Corp.*, 779 P.2d 659 (Utah 1989). In *Parry*, the plaintiff was injured in Utah while splitting logs with a maul manufactured by Hirota Tekko K.K., a Japanese manufacturer. *See id*. at 660. Hirota had sold the maul to Okada Hardware in Japan for export to the United States. *See id*. Our supreme court upheld a dismissal for lack of personal jurisdiction over the Japanese defendants. *See id*. at 661–68.

¶20    Several factors worked against jurisdiction. "Hirota and Okada had not taken active steps to sell [their] product in Utah." *Id*. at 666. "They were informed of potential sales to the western United States, but they neither came to Utah nor sent sales representatives to Utah to facilitate the marketing and purchase of their product." *Id*. "Further, the record d[id] not provide the number or percentage of mauls manufactured which were actually sold in Utah." *Id*. Finally, the Japanese defendants had not advertised in Utah. *Id*. In short, the record did not show "special designing for Utah's market, advertising in Utah, establishing channels for providing regular advice to customers in Utah, or marketing the product through a distributor who has agreed to act as a sales agent in Utah." *Id*. Thus, even "an intentional and knowing distribution

of the product in the western United States is not necessarily sufficient to satisfy the 'minimum contacts' requirement." *Id*. at 667.

¶21    The United States Supreme Court recently addressed this issue in *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780 (2011).[3] The *J. McIntyre* case involved a products-liability suit filed by a plaintiff who seriously injured his hand while using a scrap metal machine manufactured by J. McIntyre. *See id*. The accident occurred in New Jersey, but the machine was manufactured in England by an English firm. That firm neither marketed goods in New Jersey nor shipped them there. *Id*. at 2786. J. McIntyre's machines were sold in the United States by an independent distributor, who took some of the machines on consignment. J. McIntyre officials attended annual conventions to advertise its machines, but had attended no conventions in New Jersey. No more than four—and possibly as few as one—of its machines ended up in New Jersey. *Id*.

¶22    The appeal produced three opinions:  a plurality opinion representing the views of four justices, a concurring opinion representing the views of two justices, and a dissenting opinion representing the views of three justices. The Court splintered on the question of whether, in products liability cases, and especially products liability cases involving foreign defendants, the United States is more properly regarded as "a single market," *id*. at 2801 (Ginsburg, J., dissenting), or fifty separate markets, each subject to a different "sovereign authority," *id*. at 2788 (plurality opinion).

¶23    The plurality concluded that jurisdiction over J. McIntyre in the state courts of New Jersey was incompatible with principles of due process. They advocated a "forum-by-forum, or sovereign-by-sovereign," approach. *Id*. at 2789. The plurality would have jettisoned "the stream-of-commerce metaphor" in favor of a rule more sharply focused on a defendant's having manifested an intent to invoke or benefit from the protection of the forum state's laws. *See id*. at 2791. The plurality opinion

---

[3]We commend counsel for Schneider Canada for bringing this case to our attention after oral argument pursuant to rule 24(j) of the Utah Rules of Appellate Procedure. *See* Utah R. App. P. 24(j) ("When pertinent and significant authorities come to the attention of a party after that party's brief has been filed, or after oral argument but before decision, a party may promptly advise the clerk of the appellate court, by letter setting forth the citations.").

emphasized the "purposefully avails" language of *Hansen v. Denckla*, 357 U.S. 235, 253 (1985). *See J. McIntyre,* 131 S.Ct. at 2785, 2787–88, 2790 (plurality opinion). Thus, the plurality stated, "The principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign." *Id.* at 2788. Under its analysis, the facts of the case "may reveal an intent to serve the U.S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market." *Id.* at 2790. Accordingly, they concluded that New Jersey could not constitutionally exert jurisdiction over J. McIntyre. *See id.* at 2791.

¶24    In the view of the two concurring justices, the case was readily decided under existing precedent. *See id.* at 2791 (Breyer, J., concurring in the judgment). They agreed that personal jurisdiction in a products liability case is not established merely by showing that the defendant "knows or reasonably should know that its products are distributed through a nation-wide distribution system that *might* lead to those products being sold in any of the fifty states." *Id.* at 2793 (citation and internal quotation marks omitted). The facts of *J. McIntyre* showed no regular flow or regular course of sales in New Jersey; no special state-related design, advertising, advice, or marketing; and no specific effort to sell in New Jersey. *See id.* at 2792. Hence, the concurring justices, like the plurality, found no jurisdiction. *See id.* at 2791.

¶25    Three dissenters would have sustained personal jurisdiction based on a "single market" analysis. *J. McIntyre Machinery, Ltd. v. Nicastro,* 131 S.Ct. 2780, 2801 (2011) (Ginsburg, J., dissenting). They saw the case as typical of modern international commerce: "A foreign-country manufacturer engages a U.S. company to promote and distribute the manufacturer's products, not in any particular State, but anywhere and everywhere in the United States the distributor can attract purchasers. The product proves defective and injures a user in the State where the user lives or works." *Id.* at 2799. In their view, "McIntyre UK, by engaging McIntyre America to promote and sell its machines in the United States, 'purposefully availed itself' of the United States market nationwide, not a market in a single State or a discrete collection of States." *Id.* at 2801. "Like most foreign manufacturers," they reasoned, J. McIntyre "was concerned not with the prospect of suit in State X as opposed to State Y, but rather with its subjection to suit anywhere in the United States." *Id.* Hence, the dissent concluded that jurisdiction was proper. *See id.* at 2804.

¶26    We now consider the case at bar in light of these authorities. Gardner argues that Schneider Canada and SPX had a long-standing relationship, that "Schneider Canada

knew that the majority of SPX's vertical dock levelers were sold and installed throughout the United States, and [that] Schneider Canada had made at least one sales presentation at SPX's offices in Dallas, Texas." In addition, she argues that the sale of this particular control box was not an isolated occurrence, but part of a marketing program by SPX (though not Schneider Canada) for sale of machinery in, among other states, Utah. However, Gardner does not contend that the record demonstrates that Schneider Canada took deliberate steps to serve the Utah market or even that it knew that a control box it manufactured would end up in Utah.

¶27    We conclude that, under the foregoing authorities, Schneider Canada lacks the requisite minimum contacts with the State of Utah. Schneider Canada is located and operates in Canada; it maintains no offices, owns no property, and has no employees in Utah. Schneider Canada manufactured the control box in question in Canada and sold it in Canada to a Canadian distributor. Like the Japanese defendants in *Parry* and the English defendant in *J. McIntyre,* Schneider Canada did not purposefully avail itself of the Utah market. It did not take active steps to sell its products in Utah. Although it was aware of potential sales in the United States, it neither advertised in Utah nor sent sales representatives to Utah. In short, as in *Parry*, the record does not show "special designing for Utah's market, advertising in Utah, establishing channels for providing regular advice to customers in Utah, or marketing the product through a distributor who has agreed to act as a sales agent in Utah." *Parry v. Ernst Home Center Corp.,* 779 P.2d 659, 666 (Utah 1989). And although this was not as isolated a sale as occurred in *J. McIntyre*, the record here does not show "special state-related design, advertising, advice, marketing, or . . . specific effort by the [Canadian] Manufacturer to sell in [Utah]." *See J. McIntyre Machinery, Ltd.,* 131 S.Ct. at 2792 (Breyer, J., concurring).

¶28    In addition, Schneider Canada's "knowledge of the mere possibility that its product might be taken into a region of the country in which Utah is located is not sufficient" to subject it to Utah's jurisdiction. *See Parry,* 779 P.2d at 667 (quoting *Fidelity & Casualty Co. of N.Y. v. Philadelphia Resins Corp.,* 766 F.2d 440, 447 (10th Cir. 1985)). Finally, unlike J. McIntyre, Schneider Canada "was a component-part manufacturer with 'little control over the final destination of its products once they were delivered into the stream of commerce.'" *See J. McIntyre,* 131 S. Ct. at 2803 (Ginsburg, J., dissenting) (quoting *A. Uberti & C. v. Leonardo,* 892 P.2d 1354, 1361 (Ariz. 1995)).

¶29    Because we conclude that, under controlling precedent, Schneider Canada lacked minimum contacts with the State of Utah, we need not examine whether principles of

"'fair play and substantial justice' . . . defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477–78 (1985); *accord Pohl Inc., of Am. v. Webelhuth,* 2008 UT 89, ¶ 23 n.35, 201 P.3d 944. Nor need we evaluate "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system . . ." *Parry,* 779 P.2d at 662 (quoting *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 114 (1987)).[4]

¶30    Finally, Schneider Canada's argument that the jurisdictional question was rendered moot by the jury's verdict is itself rendered moot by our decision on the question of jurisdiction.

## II. Superseding Cause

¶31    In her second claim of error, Gardner challenges jury instruction No. 48, which instructed the jury on superseding cause.

¶32    At trial, Gardner opposed the instruction on the ground that Utah's comparative negligence scheme has displaced the doctrine of superseding cause, and that there was no evidence of intentional conduct on the part of Sysco. However, Gardner submitted a proposed jury instruction on superseding cause in the event the trial court decided to instruct the jury on that issue. Gardner's proposed jury instruction tracked CV210, the superseding cause instruction found in the Model Utah Jury Instructions. CV210 includes two variants: alternative A requires that the intervening act be intentional; alternative B requires only that the intervening act be negligent. Gardner's proposed instruction incorporated alternative A.

---

[4]Gardner also contends that, in looking at whether exerting jurisdiction over Schneider Canada would offend traditional notions of fair play and substantial justice, we should consider that Schneider Canada is a member of a "global conglomerate" whose activities reach well into Utah. However, every case cited by Gardner in support of this argument involved corporations "that are essentially alter egos of each other," and Gardner acknowledges that she is not asserting an alter ego theory here. For this reason, and because we find the requisite minimum contacts lacking in any event, we do not address this argument further.

¶33    The trial court gave the following instruction, which tracks Model Utah Jury Instruction CV210, alternative A—and thus Gardner's conditionally proposed instruction—in all material respects:

> Defendants claim that [they are] not liable for the Plaintiffs' harm because of the later fault of another party. To avoid liability for the harm, Defendants must prove all of the following:
>
> (1) that the other party's conduct occurred after Defendants' conduct;
> (2) that a reasonable person would consider the other party's conduct extraordinary;
> (3) that Defendants could not foresee that the other party would act in an intentional manner; and
> (4) that the harm resulting from the other party's conduct was different from the kind of harm that could have been reasonably expected from Defendants' conduct.

¶34    On appeal, Gardner contends that Utah's comparative negligence statute, enacted in 1986, supplanted the doctrine of superseding cause. *See* Utah Code Ann. § 78-27-38 (1986). She argues that, under our comparative negligence regime, the jury should have been required to "compare and allocate the fault (*i.e.*, negligence) of SPX, HOJ, and Sysco," and should not have been allowed to view "Sysco's fault [as] a potential superseding cause wiping out SPX's and HOJ's fault." SPX and HOJ respond that (1) the doctrine of superseding cause remains the law in Utah, (2) any issue with respect to the challenged jury instruction is moot because the jury found that these defendants were not negligent, (3) any error in the jury instruction was invited, and (4) any error in the jury instruction was not prejudicial.

¶35    To begin with, we are skeptical of Gardner's claim that the comparative negligence statute supplanted the doctrine of superseding cause. Notwithstanding the enactment of the comparative negligence statute in 1986, Utah courts routinely refer to and apply the doctrine in negligence cases. *See, e.g., Hess v. Canberra Development Co., LC,* 2011 UT 22, ¶ 4, 254 P.3d 161 ("[B]ecause intervening and superseding causes are

not a defense to intentional torts, we hold that the district court did not err when it declined to give the jury the Developers' proposed instruction."); *Magana v. Dave Roth Constr.*, 2009 UT 45, ¶ 27, 215 P.3d 143 ("An event is the legal or proximate cause of the plaintiff's injury when the event in natural and continuous sequence, (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred." (internal quotation marks omitted)); *McCorvey v. Utah State Dept. of Transp.*, 868 P.2d 41, 45 (Utah 1993) ("In this case, the jury was properly instructed on the issue of superseding cause[.]"); *Steffensen v. Smith's Mgmt Corp.*, 820 P.2d 482, 488 (Utah Ct. App. 1991) ("A superseding cause, sufficient to become the proximate cause of the final result and relieve defendant of liability for his original negligence, arises only when an intervening force was unforeseeable and may be described with the benefit of hindsight, as extraordinary." (citation omitted)).[5]

¶36    Of course, the continued viability of the doctrine of superseding cause does not mean that jury instruction No. 48 was a correct statement of that doctrine. But even if the jury instruction was flawed—a question on which we express no opinion—we agree with SPX and HOJ that Gardner has not demonstrated that any such flaw was prejudicial. Errors in jury instructions "'require reversal only if confidence in the jury's verdict is undermined.'" *Hess*, 2011 UT 22, ¶ 38 (quoting *Tingey v. Christensen*, 1999 UT 68, ¶ 16, 987 P.2d 588). Here, the jury returned a special verdict form stating that neither SPX nor HOJ was negligent. Consequently, the jury had no need to decide whether the defendants' negligence proximately caused the death of Aaron Gardner or to apportion fault among SPX, HOJ, Sysco, and Aaron Gardner himself. Gardner does not explain how an error in a jury instruction involving superseding cause could have affected a verdict where the jury found no negligence.

¶37    Gardner's opening brief states, "Unfortunately the parties cannot determine why the jury did not assess fault to SPX and HOJ." Yet the special verdict form is explicit on this point. Question No. 11 dealt with the apportionment of fault among SPX, HOJ, Sysco, and Aaron Gardner. It instructed the jury that, if they answered Questions No. 1 and No. 3 "no," then they should not assign any fault to SPX. Questions No. 1 and

---

[5]Gardner's opening brief cites one pre-1986 Utah case; cases from Connecticut, New Mexico, and Kentucky; and two law review articles, but—inexplicably—none of these Utah cases.

No. 3 asked whether SPX had acted negligently; the jury answered those questions "no"; hence the jury assigned no fault to SPX. Question No. 11 further instructed the jury that, if they answered Question No. 5 "no," then they should not assign any fault to HOJ. Question No. 5 asked whether HOJ had acted negligently; the jury answered that question "no"; hence the jury assigned no fault to HOJ. Thus, the jury did not assess fault to SPX and HOJ because, having found those defendants not negligent, the special verdict forbade them to do so.

¶38    Gardner's reply brief states, "Given the weight of the evidence showing that the leveler was faulty, and the jury's determination that the defendants were not liable, the trial court's error created a sufficiently high likelihood that the outcome would have been different had the jury instruction 48 not been given." Again, pursuant to the instructions in the special verdict form, once the jury concluded that SPX and HOJ were not negligent, their deliberations were complete. They had no occasion to consider proximate cause, superseding cause, or allocation of fault. As our supreme court stated in *Hanks v. Christensen*, 11 UT 2d 8, 354 P.2d 564 (Utah 1960), "There being no negligence upon which to predicate liability, the question of the extent of proximate causation of damage is not here confronted." *Id*. at 13.

¶39    In short, the jury's finding that SPX and HOJ were not negligent breaks any causal connection between the challenged jury instruction and the verdict of no cause of action. Consequently, whatever errors may or may not have crept into instruction No. 48, they do not undermine our confidence in the jury's verdict.


CONCLUSION

¶40    Schneider Canada, the Canadian manufacturer of a component part of the dock leveler in question, had insufficient contacts with the State of Utah to support personal jurisdiction under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Under controlling precedent, the facts of record fall short of demonstrating that Schneider Canada purposefully availed itself of the Utah market or the Utah judicial system.

¶41    With respect to the jury instruction on superseding cause, we conclude that Gardner has failed to show how any possible error in that instruction could have

affected the jury's verdict.  Having found that SPX and HOJ were not negligent, the jury never confronted the questions of causation and relative fault.

¶42     Affirmed.

_____
J. Frederic Voros Jr.,
Associate Presiding Judge

-----

¶43     WE CONCUR:

_____
Carolyn B. McHugh,
Presiding Judge

_____
James Z. Davis, Judge