**2020 UT App 9**

# THE UTAH COURT OF APPEALS

KEATY LLC, TM KEATY AND ASSOCIATES INC.,
AND STEVEN KEATY,
Appellants,
*v.*
BLUEPRINT SUMMER PROGRAMS INC.
AND MICHAEL DODSON,
Appellees.

Opinion
No. 20180447-CA
Filed January 9, 2020

Third District Court, Salt Lake Department
The Honorable Richard D. McKelvie
No. 179910990

Jay L. Springer, Attorney for Appellants

Justin D. Heideman and Thomas R. McCosh,
Attorneys for Appellees

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES KATE APPLEBY and JILL M. POHLMAN concurred.

HAGEN, Judge:

¶1     Keaty LLC, TM Keaty and Associates Inc., and Steven Keaty (collectively, the Keaty parties) appeal the district court's dismissal of their claims arising out of their business dealings with Blueprint Summer Programs Inc. (Blueprint) based on lack of personal jurisdiction. We conclude that Blueprint's affiliations with Utah are insufficient to establish general jurisdiction and that the facts alleged relating to the Keaty parties' individual claims are insufficient to establish specific jurisdiction. Accordingly, we affirm.

## BACKGROUND[1]

¶2      Steven Keaty is a Nevada resident who operates two businesses: Keaty LLC and TM Keaty and Associates Inc. (TM Keaty). Keaty LLC is a Nevada limited liability company with a Utah address that offers business consulting services. TM Keaty is a Utah corporation with a Utah address that offers accounting and personal assistance services.

¶3      Blueprint is a company that runs summer camp programs for high school students from across the country at college

---

1. In determining whether the district court properly granted Blueprint's motion to dismiss for lack of personal jurisdiction, "we accept the factual allegations in the [amended] complaint as true and consider them, and all reasonable inferences to be drawn from them, in the light most favorable to [the Keaty parties]." *See Wagner v. Clifton*, 2002 UT 109, ¶ 2, 62 P.3d 440 (cleaned up). Here, the parties dispute whether the operative facts derive from the original or amended complaint. The Keaty parties filed the amended complaint in response to Blueprint's motion to dismiss after the deadline for amended pleadings had passed and without leave of the court. However, Blueprint did not move to strike the amended complaint, and it is unclear from the record whether the district court's order of dismissal relates to the original or amended complaint. While the original complaint did not list TM Keaty and Associates Inc. as a plaintiff, it did assert that Keaty LLC assumed all of the rights and liabilities of TM Keaty, and each of the relevant jurisdictional facts in the amended complaint are included in either the original complaint or the documentary evidence submitted to the district court. As a result, which version of the complaint the district court considered has no impact on our jurisdictional analysis. For purposes of this appeal, we accept the Keaty parties' assertion that the district court ruled on the amended complaint and that TM Keaty is a proper party to this appeal.

campuses, none of which are in Utah. Blueprint is incorporated and has offices in North Carolina. Michael Dodson is an executive director at Blueprint and also resides in North Carolina.

¶4     In February 2016, Keaty, Dodson, and another Blueprint executive met at Blueprint's office in North Carolina to arrange for Keaty LLC to provide consulting services to Blueprint (the February meeting). Keaty LLC agreed to provide consulting services to Blueprint for compensation in an amount to be determined at a later date. Beginning shortly thereafter, Keaty and Dodson participated in regular telephone or video conference calls through which consulting services were provided. Keaty participated in most, if not all, of those calls from locations in Utah and Nevada.

¶5     During this course of dealing, Blueprint began to receive accounting and personal assistance services through Keaty's other company, TM Keaty. One particular TM Keaty employee provided personal assistance services from Salt Lake City, Utah. The agreement under which the employee provided these services "expressly required her to remain an employee of TM Keaty while providing services to Blueprint, and also prohibited [the employee] from seeking employment with Blueprint or entering into an employment relationship with Blueprint." Additionally, Blueprint agreed "not [to] seek to employ, nor actually employ, [the employee] directly for a reasonable period based on the services [the employee] provided to [Blueprint]." From March to August 2016, TM Keaty regularly sent invoices to Blueprint for services that were provided by TM Keaty employees who lived and worked in Utah. Blueprint timely remitted payments for those services to TM Keaty's Utah address.

¶6     By around August 2016, the relationship between the Keaty parties and Blueprint had begun to deteriorate. When Keaty sought clarification from Blueprint regarding compensation for the consulting services provided by Keaty

LLC, Blueprint stopped returning calls for several weeks. Finally, during a phone call with Dodson in October 2016, Keaty again asked about the compensation for the consulting services, but Blueprint was unwilling to address the issue. In December, the Keaty parties sent Blueprint an invoice for Keaty's services in the amount of $9,338.80.

¶7     Also in August 2016, the TM Keaty employee who had performed personal assistance services to Blueprint informed TM Keaty that she intended to seek employment with Blueprint. TM Keaty informed the employee that doing so would violate her employment agreement. Then, "in anticipation of being terminated," the employee quit her job with TM Keaty. Immediately after that, the employee began working for Blueprint. The employee's unexpected departure "caused TM Keaty financial harm and caused TM Keaty to incur executive costs."

¶8     As a result of the above-described facts, the Keaty parties brought suit in Utah against Blueprint for numerous claims. The district court dismissed all of the claims based on lack of personal jurisdiction over Blueprint and Dodson. The Keaty parties now appeal.

ISSUE AND STANDARD OF REVIEW

¶9     The Keaty parties contend the district court erred by concluding that it lacked personal jurisdiction over Blueprint. "Because the propriety of a motion to dismiss is a question of law, we review for correctness, giving no deference to the decision of the trial court." *Wagner v. Clifton*, 2002 UT 109, ¶ 8, 62 P.3d 440 (cleaned up).

ANALYSIS

¶10    "Personal jurisdiction means the power to subject a particular defendant to the decisions of the court." *Rocky*

*Mountain Claim Staking v. Frandsen*, 884 P.2d 1299, 1301 (Utah Ct. App. 1994) (cleaned up). "A court may take personal jurisdiction of a nonresident defendant if the requirements of due process and the state's long-arm statute are met." *Id.* Utah's long-arm statute is coextensive with the constitutional limitations imposed by the federal Due Process Clause. *Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 32, 201 P.3d 944; *accord* Utah Code Ann. § 78B-3-205 (LexisNexis 2018). Therefore, to succeed on appeal, the Keaty parties must have alleged facts sufficient for us to conclude that Blueprint's affiliations with and connections to Utah are "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Pohl*, 2008 UT 89, ¶ 23 (cleaned up); *see also International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

¶11    There are two categories of personal jurisdiction: general and specific. General jurisdiction, also known as all-purpose jurisdiction, "permits a court to exercise power over a defendant without regard to the subject of the claim asserted and is dependent on a showing that the defendant conducted substantial and continuous local activity in the forum state." *Pohl*, 2008 UT 89, ¶ 9 (cleaned up). In contrast, "specific personal jurisdiction gives a court power over a defendant only with respect to claims arising out of the particular activities of the defendant in the forum state and only if the defendant has certain minimum local contacts." *Id.* ¶ 10 (cleaned up). The Keaty parties argue that Utah courts may exercise both general and specific jurisdiction over Blueprint in relation to their claims,[2] and so we address each in turn.

---

2. The Keaty parties also assert claims against Dodson in his individual capacity. But on appeal, the Keaty parties make no effort to distinguish between Blueprint and Dodson, and the entirety of their argument is aimed at addressing whether Blueprint is subject to personal jurisdiction in Utah. For example, regarding general jurisdiction, the Keaty parties refer to caselaw

(continued…)

## I. General Personal Jurisdiction

¶12　A party is subject to general personal jurisdiction when its affiliations with the forum state "indicate[] general submission to a State's powers." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction," *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (cleaned up), because they evidence "an intention to benefit from and thus an intention to submit to the laws of the forum State," *Nicastro*, 564 U.S. at 881. Functionally, a court can exercise general jurisdiction over a corporation where "that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Daimler*, 571 U.S. at 138–39 (cleaned up). "By contrast, those who . . . operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *Nicastro*, 564 U.S. at 881.

¶13　We cannot conclude, based on the Keaty parties' factual allegations, that Blueprint's affiliations with Utah are "so

---

(…continued)

discussing general jurisdiction over corporations, not over individuals. Regarding specific jurisdiction, the Keaty parties seek to distinguish an unfavorable precedent by emphasizing that the defendant in that case was an individual, not a corporate entity. Because no effort was made to distinguish between the connections Blueprint and Dodson have to Utah and because the Keaty parties' arguments appear to be aimed primarily at Blueprint, we decline to address any jurisdictional questions relating to Dodson individually, and we therefore affirm the district court's dismissal of claims against him. *See Harris v. IES Associates, Inc.*, 2003 UT App 112, ¶ 18 n.6, 69 P.3d 297 (declining to consider issues technically raised on appeal when the appellant does not address those issues in the argument section of its brief).

continuous and systematic as to render it essentially at home" in Utah. *See Daimler*, 571 U.S. at 139. The amended complaint makes clear that Blueprint is a North Carolina corporation and that its offices are located in North Carolina. Only two facts are alleged that could possibly demonstrate Blueprint's continuous affiliation with Utah: (1) one of Blueprint's executives has a Utah residential address, and (2) Blueprint's summer programs accept applicants from any state, including Utah. An allegation that an executive of a corporation resides in Utah is, without more, insufficient to show that the corporation itself is at home here. *See DeLorenzo v. Viceroy Hotel Group, LLC*, 757 F. App'x 6, 9 (2d Cir. 2018) (concluding that a defendant corporation was not subject to general jurisdiction in New York even where the plaintiff alleged that the defendant's "former director of sales and marketing . . . is purportedly a New York resident who worked from a home office or otherwise made trips to New York"). And Blueprint cannot be considered at home in Utah merely because it accepts summer program applicants from Utah, in addition to every other state. *See Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them.").

¶14    The Keaty parties have not alleged any business activities undertaken by Blueprint that would closely approximate having its principal place of business in Utah. In the absence of such factual allegations, the district court rightly rejected the Keaty parties' assertion that "Blueprint has maintained substantial and continuous activity in Utah."

## II. Specific Personal Jurisdiction

¶15    "Specific personal jurisdiction gives a court power over a defendant only with respect to claims arising out of the particular activities of the defendant in the forum state." *Raser Techs., Inc. v. Morgan Stanley & Co.*, 2019 UT 44, ¶ 35, 449 P.3d 150 (cleaned up). A court may exercise specific jurisdiction over a party "only when the party has minimum contacts with the state such that the maintenance of the suit does not offend traditional

notions of fair play and substantial justice." *Id.* ¶ 36 (cleaned up); *see also International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "In judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation." *Raser Techs.*, 2019 UT 44, ¶ 36 (cleaned up); *see also Calder v. Jones*, 465 U.S. 783, 788 (1984). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

¶16   Importantly, "to assert specific jurisdiction, a plaintiff must demonstrate not only the connection between the defendant and the forum, but also the connection between the forum and the claims at issue." *Raser Techs.*, 2019 UT 44, ¶ 45; *see also Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781–83 (2017). Therefore, the existence of specific jurisdiction relating to a single claim does not automatically establish specific jurisdiction for all claims listed in a complaint. Rather, "when a plaintiff relies on specific jurisdiction, he must establish that jurisdiction is proper for each claim asserted against a defendant." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *see also International Energy Ventures Mgmt., LLC v. United Energy Group, Ltd.*, 818 F.3d 193, 211 n.73 (5th Cir. 2016) ("The plaintiff has the burden of demonstrating specific jurisdiction for each claim asserted against the nonresident defendant.").

¶17   In accordance with this principle, we determine whether specific jurisdiction exists for each of the Keaty parties' various claims by analyzing Blueprint's purposeful conduct toward Utah in connection with the facts underlying those claims. In their amended complaint, the Keaty parties asserted ten causes of action based on two separate sets of operative facts: (A) claims relating to Blueprint's nonpayment of consulting services and (B) claims relating to enticement of a TM Keaty employee. We address the claims arising under each set of facts separately to determine whether Blueprint's suit-related conduct created a substantial connection with Utah.

A.  Claims Relating to Blueprint's Nonpayment for Consulting Services

¶18  The first set of claims arose out of the business relationship between Blueprint and Keaty LLC. More specifically, these claims pertain to Blueprint's representations at the February meeting and subsequent nonpayment for the consulting services provided through Keaty LLC. These claims include: (1) breach of contract, (2) quantum meruit, (3) misrepresentation and nondisclosure, (4) negotiating in bad faith, (5) dealing in bad faith/unfair dealing, and (6) unjust enrichment.

¶19  The primary facts connecting these claims to Utah are contacts that Keaty and Keaty LLC have with the forum state. For example, Keaty LLC has a Utah office, and the amended complaint generally alleges that the Keaty parties were "physically located in Utah or Nevada during most, if not all," of the consulting telephone and video conference calls with Dodson, who was in North Carolina. More specifically, Keaty avers that he "was personally present in the state of Utah on multiple occasions while performing consulting work for Blueprint through Keaty LLC." But our focus is not on the Keaty parties' connections to Utah. Rather, we must analyze defendant-Blueprint's conduct directed at Utah to see if minimum contacts exist. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014). Here, the Keaty parties have not alleged facts sufficient to establish specific jurisdiction with respect to their claims for nonpayment.

¶20  Blueprint is a North Carolina corporation that sought consulting services from Keaty LLC, a Nevada company, and Keaty, a Nevada resident. The February meeting at which Blueprint and Keaty LCC agreed to do business together took place in North Carolina. The Keaty parties have not alleged that Blueprint traveled to or otherwise reached into Utah to do business with Keaty LLC. *See O'Connor v. Sandy Lane Hotel Co.* 496 F.3d 312, 318 (3d Cir. 2007) (determining specific

jurisdiction existed only with respect to claims based on acts that "deliberately reached into [the forum state] to target two of its citizens"). The only Utah connection attributable to Blueprint—rather than to the Keaty parties—is the allegation that one of Blueprint's executives, who resides in Utah, attended the February meeting in North Carolina and participated in consulting calls while she was physically present in Utah. But the Keaty parties have not alleged any facts connecting that executive, her presence at the February meeting, or her participation in consulting calls to its claims for nonpayment.

¶21    The Keaty parties have not alleged any suit-related actions by Blueprint that were directed toward Utah. Because Blueprint did not "purposefully avail itself of the benefit of conducting business in Utah" such that Utah's "potential exercise of jurisdiction [would be] foreseeable," *see Fenn v. Mleads Enters., Inc.*, 2006 UT 8, ¶ 13, 137 P.3d 706 (cleaned up), the district court was correct to dismiss the Keaty parties' claims related to Blueprint's nonpayment for consulting services for lack of specific personal jurisdiction.

B.    Claims Relating to Enticement of a TM Keaty Employee

¶22    This category of claims arises out of Blueprint's hiring of a former TM Keaty employee in violation of an agreement between Blueprint and TM Keaty. These claims include: (1) breach of contract with respect to improperly enticing a TM Keaty employee and (2) breach of contract with respect to improperly employing a TM Keaty employee.

¶23    The facts on which these claims are based suggest a closer connection to Utah than the facts supporting claims relating to nonpayment for consulting services. TM Keaty is a Utah company. The employee worked for TM Keaty in Utah. Blueprint agreed not to "seek to employ, nor actually employ, [the employee] directly for a reasonable period" but then hired her immediately after she stopped working for TM Keaty.

¶24    But once again, these facts primarily relate to the Keaty parties' connections to Utah instead of Blueprint's. This case is comparable to *Walden*, in which a Nevada couple sued a Georgia police officer in a Nevada court due to a seizure that the officer carried out against the couple at a Georgia airport. 571 U.S. at 279–81. There, the United States Supreme Court held that mere knowledge of the plaintiffs' connections to Nevada was insufficient to support specific jurisdiction because such an approach "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 289. Rather than focus on a plaintiff's connections to the forum state, courts should instead determine whether "the *defendant's* suit-related conduct [created] a substantial connection with the forum State." *Id.* at 284 (emphasis added).

¶25    Here, as related to Blueprint's conduct in hiring TM Keaty's employee, the Keaty parties have alleged that Blueprint knew it was dealing with a Utah company and that the employee lived in Utah. But the Keaty parties have not alleged that *Blueprint's* suit-related conduct created a substantial connection with Utah. *See id.* The Keaty parties have made no factual allegations as to what Blueprint did to allegedly entice the employee away from TM Keaty. There are no allegations, for instance, that Blueprint or its agents ever traveled to Utah or reached out to anyone in Utah in an effort to entice the employee away from TM Keaty. Although one can imagine specific acts directed at Utah that Blueprint might have taken to recruit the employee, the Keaty parties have made no such allegations.

¶26    Because there are no allegations that Blueprint took deliberate actions directed at Utah to entice the employee, the district court was correct to dismiss these claims for lack of specific personal jurisdiction.[3]

---

3. The Keaty parties also make two additional claims—(1) breach of implied warranties and covenants, and (2) fraudulent

(continued…)

CONCLUSION

¶27   The Keaty parties did not allege facts from which a finding of either general or specific personal jurisdiction could be based. Therefore, the district court was correct to dismiss the Keaty parties' claims against Blueprint for lack of personal jurisdiction.[4]

¶28   Affirmed.

——————

(…continued)

nondisclosure. It is unclear from the amended complaint which set of facts those claims are based on. But because we have determined that specific jurisdiction cannot be established by the facts alleged regarding either Blueprint's nonpayment for consulting services or enticement of a TM Keaty employee, it follows that specific personal jurisdiction cannot exist for these claims regardless of the set of operative facts on which they are based.

4. The Keaty parties also argue that the district court erred by granting Blueprint's motion to dismiss without first allowing jurisdictional discovery. However, the Keaty parties did not properly move the district court to allow jurisdictional discovery, only requesting it in their memorandum opposing the motion to dismiss. *See* Utah R. Civ. P. 7(n) ("A party may not make a motion in a memorandum opposing a motion or in a reply memorandum."). Because the issue was not properly raised, the district court had no obligation to address it.